FILED
COURT OF APPEALS
DIVISION II

2013 OCT -8 AM 9: 22

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42787-7-II |
| Respondent, | |
| v. | |
| JAMES A. OLIVER, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. – James A. Oliver appeals his convictions of first degree child rape and first degree child molestation, arguing that (1) the trial court's exclusion of evidence regarding a proposed witness's sex offender status deprived him of his constitutional right to present a defense, and (2) the trial court's erroneous admission of child hearsay testimony allowed the State to present cumulative evidence. Oliver makes several additional claims of error in a pro se statement of additional grounds (SAG). Because the sex offender evidence was irrelevant and the child hearsay evidence was admissible, and because Oliver did not object to that hearsay evidence as cumulative during trial, we uphold the trial court's evidentiary rulings. We reject Oliver's additional claims of error and affirm his convictions.

## FACTS

Oliver married Jeannie Whitworth in 1996. Whitworth brought two children to the marriage: a daughter, D.M. (born in 1992), and a son, T.M. (born in 1993). Oliver and Whitworth had two daughters of their own: E.O. (born in 1997), and D.O. (born in 1999).

In 2002, Whitworth moved out of the house and the four children remained with Oliver. Oliver and the children then moved to his parents' home in Bonney Lake. After Oliver and Whitworth divorced in 2003, Whitworth had visitation with the children for three weekends a month and two weeks in the summer.

The Bonney Lake home has three bedrooms upstairs and a large room downstairs. D.M. slept in her own room upstairs, and E.O. and D.O. shared another upstairs bedroom. Their grandparents slept in the third upstairs bedroom, while T.M. and Oliver slept downstairs. When D.M. moved out in 2007 or 2008, E.O. moved into her old bedroom and D.O. had a room to herself. After leaving to live with his mother, T.M. returned to the Bonney Lake house in 2009, about three years later. He left after a few months in June 2009.

In September 2009, D.M. called her mother in tears and reported that Oliver had exposed himself to her when she was younger and that he had abused D.O. After talking to D.M., Whitworth asked nine-year-old D.O. whether Oliver had ever touched her, and the child curled up on the couch and started crying. During a subsequent interview with Patricia Mahaulu-Stephens at the Child Advocacy Center at Mary Bridge Hospital, D.O. made detailed allegations of abuse inflicted by Oliver in her bedroom. She alleged generally that T.M. had touched her in the same way.

The State charged Oliver by amended information with one count of first degree child rape and one count of first degree child molestation against D.O., and one count of attempted first degree child molestation against D.M. The trial began with a child hearsay hearing in which the court ruled that D.O.'s statements to D.M. and Mahaulu-Stephens would be admissible at trial. The court then addressed the State's motion in limine to exclude any reference to the sex

offender status of D.O.'s stepfather, Glenn Whitworth. The trial court granted the motion after concluding that Glenn Whitworth's sex offender status was irrelevant.

Jeannie Whitworth testified as cited above and admitted, on cross examination, that D.O. had wanted to live with her. During Mahaulu-Stephens's testimony, the State played the recording of her forensic interview with D.O. Mahaulu-Stephens did not testify separately about D.O.'s allegations. D.O. then testified that Oliver had touched her chest and vagina, and that his fingers had penetrated her vagina. She also said that T.M. had touched her vagina. D.O. said Oliver's touching sometimes hurt and that she once bled into the toilet afterward. She was not sure how many times Oliver had touched her, but she said it started when she was about five years old. D.O. admitted that she had wanted to live with her mother when she was living in Bonney Lake.

Nurse practitioner Cheryl Hanna-Truscott then testified that during her medical examination of D.O., the child told her that Oliver and T.M. had touched her inappropriately. She said that D.O. complained of bleeding from her vagina and of lower abdominal pain. D.O. had not yet gone through puberty, and Hanna-Truscott opined that penetrating trauma could explain D.O.'s "barely adequate amount of hymenal tissue" as well as her bleeding. 3 Report of Proceedings (RP) at 305.

D.M. testified that D.O. had told her about Oliver's touching and about the bleeding. D.M. added that Oliver had asked her to touch his penis and had made her shower with him.

Oliver's parents testified that D.O. had always wanted to live with her mother. Oliver then testified that T.M. had an explosive temper and had hurt all of his sisters, including D.O. He added that T.M. had slept upstairs after returning to the Bonney Lake house in 2009. Oliver denied any sexual contact with either D.O. or D.M. and reiterated that D.O. had wanted to live with her mother.

Oliver's attorney asserted during closing argument that D.O. was afraid of T.M., that T.M.'s abuse of D.O. was undisputed, and that D.O. had wanted to live with her mother. He speculated that T.M. might be responsible for D.O.'s bleeding, and he pointed to several suggestive questions as well as several inconsistencies in D.O.'s allegations against Oliver during the forensic interview.

The jury found Oliver guilty of the two counts involving D.O. but could not reach a verdict on the count involving D.M. The trial court dismissed that count and sentenced Oliver to concurrent sentences of 129 months and 72 months.

## ANALYSIS

I.   RIGHT TO PRESENT DEFENSE

Oliver argues initially that the trial court erred by granting the State's motion in limine to exclude references to Glen Whitworth's sex offender history and that this error violated his constitutional right to present a defense.

We review a trial court's ruling on a motion in limine or the admission of evidence to determine whether it was manifestly unreasonable or based on untenable grounds or reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). We review de novo the claim that a trial court's evidentiary ruling violated a defendant's Sixth Amendment right to present a defense. *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).

4

Oliver argued below that Glenn Whitworth's status as a sex offender was "highly relevant" because D.O. knew it would take an allegation of greater magnitude than Glenn Whitworth's prior conviction to entice the parties into allowing her to live with her mother. Clerk's Papers at 122. When the State argued that this evidence would be more prejudicial than relevant and would confuse the jury with irrelevant evidence of an uninvolved person's sex offender history, the court asked defense counsel to again explain the relevance. Counsel responded as follows:

> [I]t's clear that at least [D.M.] and possibly [T.M.] have spent time living with her mother and Glenn Whitworth despite his status as a sex offender. So [D.O.] sees that as a living example of what may be possible and she sees the stepbrother and sister coming and going in terms of living with, actually living with Glenn Whitworth and Jeannie Whitworth. So she knows, you know, that it's possible, she just hasn't quite figured out how to get there.
>
> . . . .
>
> I would anticipate potentially just merely getting in that evidence that he's there, he's a sex offender and presenting in the end the argument that that's the big hurdle for her and why her lies get further exaggerated to the point of naming her own father.

2 RP at 93-94. The court excluded the evidence as irrelevant.

ER 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under ER 401, evidence is relevant if it has any tendency to make the existence of a material fact more or less probable. *State v. Lord*, 161 Wn.2d 276, 294, 165 P.3d 1251 (2007). We see no material fact that the proferred evidence would have made more or less probable. The connection between Glenn Whitworth's sex offender status and D.O.'s motive to lie about Oliver was tenuous at best, and we hold that the trial court's decision to exclude the sex offender evidence was not manifestly unreasonable.

Oliver maintains, however, that the trial court's ruling barred him from presenting a complete defense because it precluded him from introducing to the jury the specific obstacle that D.O. had to overcome in order to live with her mother: a sex offender named Glenn Whitworth. The proposed evidence "would have shown the jury that D.O. knew the reason she couldn't live with her mother was because her mother's husband was a convicted sex offender." Brief of Appellant at 19.

A defendant has a right to present only relevant evidence, with no constitutional right to present irrelevant evidence. *Jones*, 168 Wn.2d at 720. The evidence regarding Glenn Whitworth's sex offender status was irrelevant. Moreover, because several witnesses testified that D.O. wanted to live with her mother, her motive to lie about her allegations was established. The trial court's ruling did not deprive Oliver of his constitutional right to present a defense. *See Jones*, 168 Wn.2d at 721 (finding constitutional violation where trial court excluded evidence that constituted defendant's entire defense).

II.   EVIDENCE OF CHILD HEARSAY

Oliver also argues that by permitting D.O., D.M., and Hanna-Truscott to testify about D.O.'s allegations in addition to playing the recording of D.O.'s forensic interview, the trial court erroneously admitted cumulative hearsay testimony. As stated, we review the trial court's admission of evidence to determine whether that admission was manifestly unreasonable or supported by untenable grounds. *Powell*, 126 Wn.2d at 258.

The trial court admitted D.O.'s allegations under the child hearsay statute, RCW 9A.44.120. This statute provides that statements made by a child under the age of ten that describe any act or attempted act of sexual contact performed with or on the child by another is admissible in evidence if:

(1)  The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2)  The child either: (a) Testifies at the proceedings; or (b) Is unavailable as a witness; PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

RCW 9A.44.120.  To assess the reliability of child hearsay statements, Washington courts apply the nine *Ryan* factors.  *State v. Woods*, 154 Wn.2d 613, 623, 114 P.3d 1174 (2005) (citing *State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984)).

During the child hearsay hearing, Oliver challenged the admissibility of D.O.'s allegations on the basis of the *Ryan* factors, questioning in particular their reliability, spontaneity, and veracity.  He objected at trial to the admission of her forensic interview on the same grounds.  Oliver does not address these objections or any of the *Ryan* factors in arguing on appeal that the trial court erroneously admitted hearsay evidence.  Consequently, he does not demonstrate that the trial court's decision to admit the child hearsay evidence under RCW 9A.44.120 was manifestly unreasonable.

We also note that Oliver never objected to any of this evidence on the basis that it was cumulative.  *See* ER 403 (relevant evidence may be excluded if needlessly cumulative).  Having failed to complain about the cumulative nature of the State's evidence during trial, Oliver has waived the right to make this complaint on appeal.  *See State v. Boast*, 87 Wn.2d 447, 451, 553 P.2d 1322 (1976) (party may assign error in an appellate court only on the specific ground of the evidentiary objection made at trial).  We conclude that the trial court properly admitted the evidence regarding D.O.'s allegations against Oliver.

III.   SAG

Oliver complains in his pro se statement that the trial court improperly instructed the jury on unanimity because it did not require the State to specify the particular act supporting each charge. Rather, the court instructed the jury that because the State had alleged that Oliver had raped and molested D.O. on multiple occasions, it had to be unanimous in finding that one particular act had been proved beyond a reasonable doubt to convict him of either crime.

In cases in which the evidence indicates that several distinct criminal acts have been committed, but the defendant is charged with only one count of criminal conduct, the constitutional requirement of jury unanimity is assured by either: (1) requiring the State to elect the act on which it will rely for conviction; or (2) instructing the jury that all 12 jurors must agree that the same criminal act has been proved beyond a reasonable doubt. *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). Failure to follow one of these options violates a defendant's state constitutional right to a unanimous jury verdict and his federal constitutional right to a jury trial. *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988).

Because the State chose not to elect the act on which it was relying for conviction, the trial court correctly instructed the jury that it had to be unanimous that one particular act of rape and one particular act of molestation had been proved beyond a reasonable doubt to convict Oliver of each offense. These instructions were based on identical instructions proposed by defense counsel and the State. Consequently, Oliver's claim of error fails, as does his claim of ineffective assistance of counsel. *See State v. Bowerman*, 115 Wn.2d 794, 808, 802 P.2d 116 (1990) (to prove ineffective assistance, defendant must show that counsel's performance was deficient and that the deficient performance was prejudicial).

8

Oliver also argues that he received ineffective assistance of counsel because his attorney failed to introduce the results of his polygraph test and failed to conduct an inquiry into an accidental encounter Oliver had with a juror during a pretrial break.

Defense counsel attached the polygraph results to a sentencing memorandum in which he argued that even though the results were inadmissible during trial, they supported a mitigated sentence. Polygraph test results are inadmissible as evidence in a criminal proceeding absent a stipulation from both parties. *State v. Rupe*, 101 Wn.2d 664, 690, 683 P.2d 571 (1984). There is no evidence of any such stipulation in the record, and counsel was not deficient in failing to request admission of the polygraph evidence.

With regard to the juror contact, defense counsel informed the court shortly before trial that Oliver had had a brief encounter in the elevator with a juror:

> Mr. Oliver came in during the break and he said he . . . hopped in an elevator and . . . Juror Number 2 was in there. He didn't recognize her and she said, I'm not supposed to be in here with you, or something to that effect. And being relatively grove green, he kind of freaked out about it, and said why and she said I'm a juror. And he came straight up here and told me what happened. I told [the prosecutor] what happened and I told him not to worry about it.

2 RP at 112. The prosecutor did not have any objection or require any inquiry of Juror 2, and the trial court did not pursue the matter. The record does not support Oliver's current claim that the encounter resulted in the juror's actual bias, and we need not address the issue further. *See* RCW 4.44.170(2) (actual bias is the existence of a state of mind on the juror's part in reference to the action or a party that satisfies the court that the juror cannot try the issue impartially and without prejudice to the substantial rights of the challenging party).

Finally, Oliver argues that he is entitled to a new trial because of cumulative error. Having rejected each claim of error he has raised, we find no basis to grant relief due to cumulative error.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

We concur:

_____
Johanson, A.C.J.

_____
Bjorgen, J.